ARCHIBALD TANNER, Plaintiff in error, who was Plaintiff below, *v.* WILLIAM L. HALL and CHAUNCEY EASTON, under the firm of HALL & EASTON, Defendants in error.

An endorsement by a partner of his separate accommodation note with the name of his firm, is a sufficient indication of the nature of the transaction to make it the duty of the bank which discounts it to inquire into his authority to use the firm name for the occasion, unless there are circumstances from which the authority can be implied.

H., a partner in the firm of H. & E., drew his separate promissory note in favour of J. C. & Co., procured their endorsement of it, added the endorsement of his own firm, and had it discounted. *Held*, that as the transaction was not within the scope of the partnership business, and as the firm had not been in the practice of endorsing the paper of H. or J. C. & Co., and had not specially sanctioned the endorsement in the particular instance, the bank's endorsee could not recover on it.

But *held* that the bank placing the proceeds to the credit of H.'s separate account, was not a circumstance to affect the bank with notice.

WRIT of error to Erie county.

It appeared, from the record, that William L. Hall and Chauncey Easton, doing business under the firm of Hall & Easton, were partners in a paper-mill at North East. On the 1st of November, 1836, Hall drew his promissory note, at three months, in favour of J. Cochran & Co., for $428, and they endorsed it for his accommodation. He added the endorsement of his own firm without his partner's knowledge, and had it discounted by the Lumbermen's Bank, which sent it to the Bank of Buffalo for collection, having placed the proceeds to his separate account. The note, being returned, was endorsed to the plaintiff by the President of the Lumbermen's Bank; and the question at the trial was, whether the bank had been a bonâ fide holder for value. There was evidence that one other note had been drawn, endorsed, and discounted by the same bank in the same way; but there was no evidence that it had been done with Easton's knowledge, or that he had given his sanction to the transaction before court.

The president (Thompson) charged, that under the circumstances, the bank was bound to ascertain from Easton, whether he had assented to the endorsement; and that the plaintiff was not entitled to recover.

The plaintiff excepted, and assigned the directions for error.

*Babbit*, for plaintiff in error, cited 1 Chitty on Bills, 39, and 42, in note; 15 Wend. 364; 17 Wend. 520; 5 Wend. 475; 8 Ves. Jun. 542; Story on Part. 200.

*Walker*, contrà, cited 1 Wend. 529; 7 Wend. 158; 14 Wend. 133; Id. 141; Id. 146; 3 Kent, 41; Story on Part. 110, 111, 128, 133; 3 Kent, 42, 43; Story on Part. 209, note.

*Babbit*, in reply.

GIBSON, C. J.   A partner is clothed with all the authority of his firm to bind it by acts within the scope of its business; but by no other acts can he bind it without the express or implied sanction of his copartners.   Where they have given it in terms, there can be no difficulty in applying the principle to particular cases: to deduce it from circumstances is less easy; and little assistance is to be had from decided cases, discrepant as they are in particulars.   Yet it seems easy to rule any case that may occur, by attending to the established distinctions.   It is not doubted that a partner cannot pay his separate debt with the joint funds, though the creditor may not suspect a misapplication; for the wrong may be redressed without prejudice to any one.   The case may be different where partnership paper is paid or pledged for a debt incurred, on the faith of it, by a partner or a stranger. If it pass into the hands of a bonâ fide holder for value, or be paid to the vendor of an article dealt in by the firm, the debt will be treated as if it had been incurred by the partnership.   The difficulty is to determine, in case of a measuring cast, between bonâ fides and malâ fides.   The latter may certainly be imputed to a holder, who omits to inquire into the true nature of a transaction which does not fall in with the current of trade; and from the application of this principle to the case before us, there results but one conclusion.   The endorsement of accommodation paper is not the ordinary business of a partnership; nor is it a necessary or legitimate incident of it.   Doubtless a few merchants have made it a part of their business to endorse for a premium, and thus take the risk of the debtor's insolvency; but these transactions have not been sufficiently numerous to constitute a class. More than this, had the firm before us dealt in this sort of insurance, the fact ought to have been shown in order to make the case an exception.

That firms, like individuals, do sometimes step out of their way to accommodate a neighbour, is undoubted; but these acts of reciprocal kindness are no part of a merchant's or manufacturer's business. For this, we have the authority of Gansevoort *v.* Williams, 14 Wend. 139, in which the subject was fully considered, though the precise point before us was not decided. Now where nothing has been done by a firm to mislead the commercial community, it is certain that all who deal with it are bound to know the nature of its business, and consequently the extent of the authority of its members. On the other hand, it is just as clear that it may, by its bearing, give them an implied authority to act in matters beyond the confines of its business. By habitually sanctioning these endorsements for the accommodation of particular houses, it may give them authority to continue the practice, as a master who sanctions contracts made by his servant in his behalf, gives him authority to contract debts for him prospectively. There is no proof, however, of precedent transactions like the present. Hall drew the note in question in favour of H. Cochran and Company, procured their endorsement of it, endorsed it with the name of his own firm, had it discounted at the Lumberman's Bank, and had the proceeds put to the credit of his separate account. Being at liberty, as a member of the firm, to dispose of its effects at will, he might check for this money without the consent of the bank which had lost the control of it; and this last feature of the case is consequently an immaterial one, as it was held to be by Lord Eldon in Ex parte Bonbonus, 8 Ves. 542. But that Hall had drawn ostensibly for his separate accommodation, sufficiently indicated that his firm's endorsement was also for his separate accommodation, and made it the duty of the bank to inquire into his authority for the act, as it would have been bound to do had he endorsed the name of the firm on the note of a stranger. The bank, then, and the present holder, are affected with knowledge that the transaction was a separate one; and we have the naked case of a note endorsed with the name of a firm in a transaction out of the line of its business: from which the conclusion is unavoidable, that it was discounted on the faith of an endorsement which was void for want of previous authority or subsequent confirmation.

Judgment affirmed.