BROWN *v.* PETTIT et al.   PETTIT'S APPEAL.   17

1896.]              Syllabus—Statement of Facts.

## J. L. Brown *v.* William H. Pettit, Administrator, and Mary A. Davis, Administratrix, of John S. Davis, deceased, and Webb Evans, Late Partners, trading as Davis & Evans, Appellants.

[Marked to be reported.]

*Banks and banking—Promissory notes—Partnership—Notice—Discount.*

Where a partner makes a promissory note in his own name payable to the order of his firm, indorses the name of the firm on the note, and requests a bank to discount the note and place the proceeds of the discount to his personal credit on the books of the bank, the bank has notice of such irregularity as imposes upon it the duty of inquiry as to whether the maker had authority from the firm to indorse the note with the firm name and procure its discount for his personal use. Cooper v. McClurkan, 22 Pa. 80, and Tanner v. Hall, 1 Pa. 417, followed. Haldeman v. Bank of Middletown, 28 Pa. 440. Ihmsen v. Negley Mohan & Co., 25 Pa. 297, distinguished.

Argued May 7, 1896. Appeal, No. 381, Jan. T., 1896, by defendants, from judgment of C. P. McKean Co., June T., 1894, No. 222, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL and DEAN, JJ. Reversed.

Assumpsit on a promissory note. Before MORRISON, J.

### HISTORY OF THE CASE.

The defendants, John S. Davis and Webb Evans, were partners under the firm name of Davis & Evans, in a general merchandising business at Kane, in McKean county, Pennsylvania, in 1892 and 1893, and J. L. Brown, the plaintiff and appellee, was at the same time doing a private banking business at Wilcox, Elk county, Pennsylvania. Kane and Wilcox were ten or twelve miles apart, connected by railroad and telegraph, and with mail communication three times a day.

On January 17, 1893, Evans presented at the banking house of Brown, the plaintiff, a note for $1,250, drawn by himself to the order of Davis & Evans and by them indorsed.

It was also indorsed "Joshua Davis." John S. Davis, the partner of Evans, was wholly ignorant of the transaction until after the note in suit—which was a renewal of the original note

18    BROWN *v.* PETTIT et al.   PETTIT'S APPEAL.

Statement of Facts—Arguments.        [178 Pa.

discounted January 17, 1893—became due April 4, 1894.   The
proceeds of this original note were, at Evans' request, placed
to his individual account on the books of the bank and were
used by him for his individual purposes.   No part of the pro-
ceeds was used in the business of the firm of Davis & Evans.
The written portion of the body of the note in suit, and the in-
dorsement " Davis & Evans," were in the handwriting of Evans,
and the indorsement, " Joshua Davis," was a forgery.

Other facts appear by the opinion of the Supreme Court.

The court gave binding instructions for plaintiff.

Verdict and judgment for plaintiff for $1,406,37.   Defendants
appealed.

*Error assigned* among others was binding instructions for
plaintiff.

*Joseph W. Bouton,* of *Bouton & Gallup,* and *J. M. McClure,*
with them *W. P. Weston,* for appellants.—The circumstances
were such as to invite inquiry, and the appellee, having failed
to inquire, bad faith on his part is to be implied, and his claim
to be a bona fide holder thereby defeated : Smith v. Harlow,
64 Me. 510 ; 2 Randolph on Commercial Paper, 999 : Merritt
v. Northern R. R., 12 Barb. (N. Y.) 605 ; Tanner v. Hall &
Easton, 1 Pa. 417 ; Hendrie v. Berkowitz, 37 Cal. 113 ; Wood's
Byles on Bills and Notes, 101 ; Miller v. Manice, 6 Hill (N. Y.),
114 ; N. Y. Fireman Ins. Co. v. Bennett, 5 Conn. 574 ; Miller
v. Consolidated Bank, 48 Pa. 514 ; Haldeman v. Bank of
Middletown, 28 Pa. 440 ; Central Nat. Bank v. Frye, 20 N. E.
Rep. 325.

*T. A. Lamb* and *F. P. Schoonmaker,* with them *Wm. Wallace
Brown* and *A. P. Huey,* for appellee.—The plaintiff in this case is
a bona fide holder of a negotiable note for value before maturity,
and the only thing that can defeat his recovery will be bad faith
on his part, and the burden to prove this bad faith is on the
defendants, and they have not done it in this case.   And even
though it should be shown that the plaintiff took the note under
circumstances which ought to have excited the suspicion of a
prudent man, it would not prevent recovery: Phelan v. Moss,
67 Pa. 59 ; McSparran v. Neeley, 91 Pa. 17 ; Bank v. Morgan,
165 Pa. 199 ; Richards v. Monroe, 85 Iowa 359 ; Kitchen v.

BROWN *v.* PETTIT et al. PETTIT'S APPEAL. 19

1896.] Arguments—Opinion of the Court.

Loudenback, 48 Ohio, 177 ; Breckenridge v. Lewis, 84 Me. 349 ; Farrell v. Lovett, 68 Me. 326 ; Ihmsen v. Negley, Mohan & Co., 25 Pa. 297 ; Miller v. Consolidated Bank, 48 Pa. 514; 1 Cook on Stock and Stockholders, 442; Goodwin v. Am. Nat. Bank, 48 Conn. 550 ; Moorehead v. Gilmore, 77 Pa. 118 ; Potts v. Taylor, 140 Pa. 601.

OPINION BY MR. JUSTICE GREEN, October 5, 1896 :

In this case the undisputed facts were that Webb Evans was the maker of the note in his own name, made it payable to the order of his firm, Davis & Evans, indorsed the name of the firm on the note and requested the plaintiff to place the proceeds of the discount to his personal credit on the books of the bank. As between Webb Evans and the firm of Davis & Evans, on the face of the paper, disregarding the forged indorsement of Joshua Davis, the proceeds of the discount should have been placed to the credit of Davis & Evans. That firm as well as Webb Evans had an account on the books of the bank and in ordinary course should have had credit for the proceeds. Had Webb Evans indorsed the note in his own name after the indorsement of Davis & Evans, then the face of the paper would have presented an apparent title in Webb Evans, and in its ordinary commercial aspect, the paper with the personal request of Webb Evans to have the proceeds placed to his credit would not have been out of the usual course. But with the apparent title to the note being in Davis & Evans, a request by the maker to have the proceeds placed to his individual credit was out of the usual course, and we think, under the authorities, the bank became subject to a duty of inquiry.

It seems to us that these facts bring the case within the ruling in Cooper v. McClurkan, 22 Pa. 80, and Tanner v. Hall & Easton, 1 Pa. 417, and distinguish it from the other cases cited for the appellee. In Cooper v. McClurkan the facts are briefly stated in the opinion thus, " McClurkan and Fleming were partners in trade and Fleming drew a bill of exchange of the partnership on himself, and negotiated it to the plaintiff, and now in a suit upon it McClurkan defends on the ground that it was not a partnership transaction. This appears to be well taken, for the case without other evidence stands just as if Fleming had given the indorsement of his partnership on his

20    BROWN *v.* PETTIT et al.  PETTIT'S APPEAL.

Opinion of the Court.                    [178 Pa

own note as security for his own debt, which he could not do: Tanner v. Hall & Easton, 1 Pa. 417." This is precisely what was done by Webb Evans. He gave his own note to his firm for the amount of the debt. He then indorsed the firm name on the note, and therefore pledged the liability of the firm for his own debt, and this he could not do. The proper thing for him to do in ordinary commercial usage would have been to deposit the note, or its proceeds if discounted, to the credit of the firm. When he did not do that he departed from the usual course in requesting the bank to place the proceeds to the credit of his private account, and thereby made a manifest misappropriation of the firm's money to his own use. The responsibility of the bank in such circumstances is thus shown in the opinion of LOWRIE, J., in the case just cited. He says, " The plaintiff says he is a bona fide holder without notice of the character of the paper. Is he without notice ? He is not if the proper inquiries usually made by a prudent man would have led him to the knowledge of the fact that the acceptor, or principal debtor, had himself drawn the bill, or, in other words, made the contract that is intended to pledge the partnership as surety for himself.

" Common prudence demanded that the authenticity of the signature of the drawers should be ascertained, and this led directly to the fact that it was made by Fleming himself, and common sense would indicate that Fleming had no right to bind his partner as his surety. It is urged that in borrowing money, copartners may give to their negotiable paper what form they please, and that therefore they ought to be liable here notwithstanding the form. The premise is true, but the conclusion needs for its support the proof that the copartners did borrow the money. If they did then Fleming is an accommodation acceptor, and the drawers are bound as the real debtors. Without this proof we must take the apparent transaction to be the true one, and regard Fleming as borrowing money for himself and attempting to pledge his partner as his surety ; that is we must decide the case according to the evidence." Every word of this is directly applicable to the case at bar, only with increased force, because here the paper was the direct obligation of Webb Evans alone to his firm, and was palpable notice to the bank that it was his private debt to his firm. When he

BROWN *v.* PETTIT et al. PETTIT'S APPEAL. 21

1896.]                    Opinion of the Court.

indorsed the firm's name and asked the banker nevertheless to place the proceeds to his individual credit it was a direct and immediate application, with the knowledge and consent of the banker, of the firm's money to the personal use of the maker.

Tanner v. Hall and Easton, 1 Pa. 417, is in the same line. We held there that an indorsement by a partner of his separate accommodation note with the name of his firm is a sufficient indication of the nature of the transaction to make it the duty of the bank which discounts it to inquire into his authority to use the firm name for the occasion, unless there are circumstances from which the authority can be implied. GIBSON, C. J., stating the facts, said, " Hall drew the note in question in favor of H. Cochran & Company, procured their indorsement of it, indorsed it with the name of his own firm, had it discounted at the Lumberman's Bank and had the proceeds of it put to the credit of his personal account. . . . But that Hall had drawn ostensibly for his separate accommodation sufficiently indicated that his firm's indorsement was also for his separate accommodation, and made it the duty of the bank to inquire into his authority for the act, as it would have been bound to do had he indorsed the name of the firm on the note of a stranger. The bank, then, and the present holder are affected with knowledge that the transaction was a separate one ; and we have the naked case of a note indorsed with the name of a firm in a transaction out of the line of its business ; from which the conclusion is unavoidable, that it was discounted on the faith of an indorsement which was void for want of previous authority or subsequent confirmation." The present case is stronger than this, because there was no intervening third party outside of the firm who had made a genuine indorsement for the accommodation of the maker. Here the transaction was direct. The partner made his own note to his own firm and then indorsed the firm name, and with the knowledge and participation of the bank took the proceeds to his own use. It was affirmatively testified by the other partner that he knew nothing of the transaction, that the firm got no part of the proceeds directly or indirectly, and it was not shown that there was any course of dealing by which indorsements of the firm name by Webb Evans on paper such as this was ever sanctioned or approved by the firm. The nature of the transaction directly informed the bank

22    BROWN *v.* PETTIT et al.    PETTIT'S APPEAL.

Opinion of the Court.                          [178 Pa.

that the firm indorsement was made by Evans for his private use, and that knowledge put them upon inquiry.

In the case of Miller v. Consolidated Bank, 48 Pa. 514, AGNEW, J., in commenting on Tanner v. Hall & Easton, and pointing out the difference between the two cases, said, "The case of Tanner v. Hall & Easton differs widely from this. There Hall drew his separate note for his own accommodation to the order of another firm, who indorsed it, then he indorsed the name of his own firm and procured it to be discounted. It was held that the form of the note and the circumstances sufficiently indicated to the bank that the note was for his individual accommodation, and thus put the bank upon notice."

The case of Haldeman v. Bank of Middletown, 28 Pa. 440, is cited for the appellee with much confidence, and is claimed to rule this case. But a very slight examination of the facts of that case shows it to be radically different from this. The draft was drawn in the firm name in favor of Haldeman who was one of the partners. Ostensibly therefore, and on the face of the paper, it purported to be the obligation of the firm to one of its own members. Upon such paper the payee was apparently the owner of the paper, and in regular course of business would be entitled to have the proceeds of the draft. There was nothing to give notice to the bank that the transaction was out of the usual course or was, or was intended to be, a fraud upon the firm. It was upon these grounds that the case was ruled. Said KNOX, J., in delivering the opinion, "The case depends upon the question whether the bank was bound to inquire as to the authority of Haldeman to draw the draft in the firm name. It is not pretended that the bank had actual notice that the discount was for Haldeman's separate use; but it is alleged that the form of the draft was sufficient to put the bank upon inquiry. The draft was made payable to Peter Haldeman's order. Was this an indication that it was not drawn by the firm in the usual course of its business? Certainly it was not; for although it may not be the ordinary form in which bills are drawn, it is by no means an unusual transaction, when the object of drawing a draft is to raise money for a firm, that it should be made payable to the order and indorsed by one of the members of the firm. . . . Where a draft or bill drawn in the name of the firm by one of the partners is offered for discount,

BROWN *v.* PETTIT et al.   PETTIT'S APPEAL.   23

1896.]               Opinion of the Court.

the presumption is that drawing the draft was a partnership transaction, even although it was made payable to the order of one of the members of the firm.  Actual knowledge that a bill or note purporting to be drawn or made by a firm was given without the consent of some of the partners is a good defense as to the non-consenting partners, but the presumption that the paper is what it purports to be cannot be overthrown upon a mere matter of form in inserting the name of one of the members of a partnership as payee."

The case of Ihmsen v. Negley, Mohan & Co., 25 Pa. 297, is also of the same character, as is fully explained in the opinion in the last case cited.  We think the assignments of error are all sustained.

Judgment reversed and venire de novo awarded.