## Julius Loeb *v.* H. L. Mellinger and Mary A. Miley, trading as H. L. Mellinger & Co., Appellants.

*Married woman as partner—Rights and liabilities.*

When a married woman becomes a member of a firm she is entitled to the same rights and exposed to the same liabilities to persons dealing with the firm as are the other members.

*Promissory note—Partnership debt—Married woman.*

Where a firm note given even for a personal debt of one of its members comes to the hands of a bona fide purchaser before maturity and without notice, the law relating to negotiable paper allows a recovery from the firm. It seems a different rule does not apply where a married woman is a member of the firm and the action is brought against the firm, at least so far as partnership property is concerned.

*Evidence—Promissory note—Fraud—Shifting burden of proof.*

Where upon proof of facts alleged in defendant's offer a case of fraud in the issuing of a promissory note would have been made out, which would have put the plaintiff to proof that he obtained the note before maturity in good faith for value, defendant should have been allowed to prove his offer because the proof of the facts alleged would have shifted the burden of proof.

*Credibility and interpretation of testimony—Question for jury.*

Where the uncontradicted testimony of the plaintiff is open to two constructions, one of which would be in favor of the defendant, the interpretation to be put on the testimony and the credibility of the witness is for the jury.

Argued Nov. 14, 1899. Appeal, No. 252, Oct. T., 1899, by defendants, from judgment of C. P. Lancaster Co., Oct. T., 1896, No. 64, on verdict for plaintiff. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Reversed. Opinion by RICE, P. J.

Assumpsit.  Before LIVINGSTON, P. J.

It appears from the record that the action was brought on a promissory note of H. L. Mellinger & Company for $235 to the order of Joseph Herzog, which was duly protested.

At the trial it appeared from the evidence that plaintiff offered the note in evidence and rested.

The trial judge rejected the following questions which counsel for the defense asked H. L. Mellinger:

[Witness was asked whether the note was signed by him without the knowledge or consent of his partner, Mrs. Miley, without any consideration, not in any partnership transaction, nor for any business whatever of Mrs. Miley's own separate estate or for necessaries for her, but merely as an accommodation to enable Joseph Herzog to raise money; and there was no horse transaction connected with it, and no consideration of any kind whatever to the said firm from Joseph Herzog.  Objected to by plaintiff.  Disallowed.  Defendant excepts.] [1]

[Witness was asked whether the note was signed by Mellinger without the knowledge or consent of his partner, Mrs. Miley, without any consideration, not in any partnership transaction, nor for any business whatever of Mrs. Miley's own separate estate or for necessaries for her, and merely as an accommodation to enable Joseph Herzog to raise money; and there was no horse transaction connected with it and no consideration of any kind whatever to the said firm from Joseph Herzog; and Mrs. Miley had no knowledge whatever of the execution of this note by her partner, H. L. Mellinger, at the time it was signed by him, and the only knowledge she had was after the maturity and protest of the note; that she is a married woman, her husband still living at the time of making the note.  Disallowed.  Defendant excepts.] [2]

Verdict and judgment for plaintiff for $271.02.  Defendant appealed.

*Errors assigned* were (1, 2) to rulings on evidence, reciting same.

*J. W. Appel*, with him *A. C. Reinoehl*, for appellants.—A married woman may not become accommodation indorser, maker, guarantor or surety for another, and she may not execute or

acknowledge a deed, or other written instrument, conveyance or mortgage of her real property, unless her husband join in such mortgage or conveyance: Real Estate Co. v. Roop, 132 Pa. 496.

Construing the act of 1887 decides that a married woman can only bind her estate for three purposes: (1) When she engages in trade or business; (2) in the management of her separate estate, and (3) for no other purpose.

If a married woman cannot be held liable for any acts outside of the three purposes mentioned, how could she be held liable by the unauthorized act of her partner in using her credit in the firm name for a transaction, in which she had no interest as a partner or individual?

We cannot see how that the plea of the plaintiff in objecting to the offers of testimony made by the defendant, that under the rule of court the partnership is admitted, there being no affidavit of defense denying the existence of the same; and this being a controversy between Julius Loeb, who purchased the note before maturity, and the firm, any equities between Herzog and the firm cannot be set up.

This plea is offset by the statement of Loeb, the plaintiff, that when he took the note in question, he knew Mrs. Miley was a married woman and a partner, and although the note was signed by the firm name of H. L. Mellinger & Company, he understood it was given by Mellinger, for a horse bought by himself.

If under all of these decisions a married woman is restricted, as set forth, and cannot bind her estate herself, how can a partner, either with or without her consent, sign any note or obligation to bind her outside of any business relating strictly to the partnership?

Since the act of 1893 in Patrick & Company v. Smith, 165 Pa. 526, it was held:

" That the wife was an accommodation indorser for the husband on the draft and accommodation drawer for him on the note, and she was within the protection of the proviso of the Act of June 8, 1893, P. L. 344, forbidding a married woman to become accommodation indorser, guarantor, or surety for another."

*W. U. Hensel*, for appellee.—The question in the case is, whether a married woman, who engages in trade and is partner

in a firm, can defend against a note executed by that firm in the hands of an innocent third party, without notice, before maturity, on the ground that her firm was an accommodation indorser of it.

Since the passage of the Act of June 3, 1887, P. L. 332, a married woman has the power to carry on a business as if she were a feme sole : Wayne v. Lewis, 23 W. N. C. 441.

Promissory notes given subsequently to the act by a firm of which a married woman is a member, and renewals of notes given by the same firm prior to the act, are valid as against the married woman, the moral obligation to pay the original notes being a sufficient consideration for the renewals: Brooks v. Merchants' National Bank, 125 Pa. 394; Koechling v. Henkel, 144 Pa. 215.

A married woman's power to contract is now so general that her liability is the exception rather than the rule: McNeal v. McNeal, 161 Pa. 109.

If a note of the firm be given for the private debt of one of the partners, the right of the person seeking to recover will depend upon the consent of the remaining parties; but the paper is good against the firm in the hands of a bona fide holder: Haldeman & Grubb v. Bank, 28 Pa. 440.

Nothing but clear evidence of knowledge or mala fides can impeach the title of a bona fide holder for value : Moorehead v. Gilmore, 77 Pa. 118.

A note signed with the firm's name and dated during the existence of it, is prima facie evidence that it was given for partnership purposes, unless the contrary appears upon its face : Hogg v. Orgill, 34 Pa. 344.

The act of 1893, and the present state of married woman's law in Pennsylvania, in no respect exempt a business firm of which she happens to be a member from these general ruling principles.

OPINION BY RICE, P. J., February 16, 1900 :

This was a suit brought by the holder of a negotiable promissory note purporting to have been made by H. L. Mellinger and Company to the order of Joseph Herzog and indorsed by him. The plaintiff offered the note in evidence and rested. The defendant, Mary A. Miley, then made offers to prove that she

was a married woman, that the note was given by her part-
ner, Mellinger, without her consent or knowledge, that it was
not given in any partnership transaction, nor for any debt
contracted on account of her separate estate, nor for neces-
saries, and that it was simply an accommodation note given
to Herzog to enable him to raise money. These offers were
rejected. She then called the plaintiff for cross-examination,
and he being asked as to the circumstances under which he
became holder of the note testified as follows:

"Q. Did you buy this note of Joseph Herzog? A. I did.
Q. At the time you bought it from him did you make any
inquiry as to who he got the note from?"

Objected to by plaintiff.

"A. I took the firm name. Q. Did you ask him any ques-
tions in regard to the note? You are a shrewd business man,
Mr. Loeb. A. I asked him who the partner of Mr. Mellinger
was and he told me Mrs. Miley. Q. Did you ask him how
he came to get the note? A. No. Q. Did you ask him
no questions? A. No. Except he told me he had a horse
transaction."

Mr. Brown: "Q. Got it for a horse he sold to them?
A. Yes, sir. Q. Is he here? A. Not to my knowledge.
Q. You took it then and bought it? A. Yes, sir. Q. Never
inquired of Mrs. Miley about it? A. No, sir."

Objected to by plaintiff.

Mr. Brown: "Q. This was before the note was due?
A. Yes, sir. Q. And that is all you know about it? A. That
is all I know. Q. He said Mrs. Miley was a partner? A. Of
Mr. Mellinger. Q. And that it was a horse? A. Yes, sir,
that he sold to Mr. Mellinger himself."

There being no further testimony, the court gave the jury
binding instructions to find for the plaintiff.

It is contended that the defendant's offers were properly re-
jected, because they were not coupled with an offer to prove
that the plaintiff took the note with notice of the fact that it
was an accommodation note and was given without the knowl-
edge or consent of Mary A. Miley. This was not a sufficient
reason for rejection of the evidence, even if we accede to the
proposition that an accommodation note signed with the firm
name by the business partner of a married woman without her

consent or knowledge is binding upon her if it come into the hands of a bona fide indorsee for value before maturity. In a suit by an indorser of a negotiable note against the maker, the prima facie presumption is that the plaintiff obtained it upon a valuable consideration in the usual course of business before it was due. Where the note purports to have been made by a firm, and the partnership is proved or admitted by the pleadings the same presumption arises, and the additional presumption that it was given for the benefit of the firm. But where the defendant in the issue is a married woman and shows that it was an accommodation note issued by her copartner without her knowledge or consent, the question as to her liability is not free from difficulty. The Act of June 8, 1893, P. L. 344, provides that a married woman, whilst as to most contracts given the rights of a feme sole, "may not become accommodation indorser, maker, guarantor or surety for another." It may be argued with much force, that, as a married woman has no contractual capacity to bind herself in that way, the purchaser of her accommodation note takes it charged with her disability and subject to her right to set up that defense. It seems, however, that there is a plain distinction between a note given by a married woman which has nothing on its face to mislead the public or to avert inquiry into its consideration, or the contractual capacity of the maker, and a note appearing on its face to have been lawfully issued for a partnership debt.

It is clear that a married woman can engage in a trade or business on her own account since the act of June 8, 1893. That act gives her ample power to do so. If it appears wise to her to become a member of a firm instead of engaging in trade on her own individual account we can see nothing in the act to forbid it. But when she becomes a member of a firm she is entitled to the same rights and exposed to the same liabilities to persons dealing with the firm as are the other members. Among those rights, in the absence of stipulations to the contrary in the partnership articles, is that of incurring a debt on behalf of the firm in the transaction of its business, and of giving the firm's note as an evidence of its indebtedness. Of course one member cannot give the firm's note for his individual indebtedness. As such an act would be outside of the agency which each member has the right to exercise on behalf

of the firm, it does not bind it. But when a negotiable note, given even for a personal debt of one of its members, comes to the hands of a bona fide purchaser before maturity and without notice, the law relating to negotiable paper allows a recovery from the firm. The rights of third parties have intervened and the firm must suffer, although if the contract were between the original parties to the transaction its defense would be perfect: Haldman v. Bank of Middletown, 28 Pa. 440; Potts v. Taylor, 140 Pa. 601; Real Estate Investment Co. v. Russell, 148 Pa. 496.

Does a different rule apply where a married woman is a member of the firm, and the action is brought against the firm? So far at least as partnership property is concerned we are not prepared·to say that the same rule does not apply. But granting that it applies without qualifications, upon whom does the burden of proof rest?

Clearly upon proof of the facts alleged in the defendant's offers, a case of fraud in the issuing of the note would have been made out which would have put the plaintiff to proof that he obtained the note ·before maturity in good faith and for value: Knight v. Pugh, 4 W. & S. 445; Kuhns v. Gettysburg National Bank, 68 Pa. 445; Lerch Hardware Co. v. The Bank, 109 Pa. 240; Investment Co. v. Russell, 148 Pa. 496; Porter v. Gunnison, 2 Gr. 297. If the plaintiff shows these facts the defense may he demolished, but that is no reason why he should not be required to show them, as the above cited cases and many others that might be cited abundantly show. It follows, that, whether or not the facts set up by the defendant would have been a complete defense as against a bona fide holder who obtained the note before maturity for value, the defendant should, nevertheless, have been permitted to prove them. A party has a right to prove any fact relevant to the issue, if proof of that fact will shift the burden of proof.

It is further urged that the evidence was not admissible because the defendant had not denied the partnership in her affidavit of defense as required by the rule of court. True she did not deny the partnership but she did deny in unequivocal terms that this was a partnership transaction. Indeed she set forth all the facts which she offered to prove on the trial. This was a sufficient compliance with the rule to enable her to put those facts in evidence.

It may be said that the error in rejecting the offers was harmless because it appeared by the uncontradicted testimony of the plaintiff subsequently given that he obtained the note before maturity in good faith and for value. This depends upon the interpretation to be put on that testimony, and the credibility of the witness. In one place it conveys the impression that when he took the note he was told that it had been given for a horse sold to the firm. In another place he uses language from which a jury might infer that it was given for a horse sold to Mellinger individually, and if that is what he meant it is impossible to see how he can claim to be an innocent holder. Under the circumstances it was not for the court but for the jury to decide what he meant. As Mr. Justice TRUNKEY said in Maynes v. Atwater, 88 Pa. 496, he "may be either cultured or illiterate, evasive or candid, but it was for the jury to determine his credibility as a witness, the meaning of his words and find the facts." Therefore we cannot say that the rejection of defendant's offers was harmless error.

Judgment reversed and venire facias de novo awarded.