THE PEOPLES NATIONAL BANK OF NEW BRUNSWICK, NEW JERSEY, v. LOUISA SCHEPFLIN.

Argued June 6, 1905—Decided November 13, 1905.

1. Under section 5 of the Married Woman's act (*Pamph. L.* 1895, *p.* 821; *Gen. Stat., p.* 2017), which declares that any married woman shall have the right to bind herself by contract, &c., "*provided,* that nothing herein shall enable such married woman to become an accommodation endorser, guarantor or surety, nor shall she be liable on any promise to pay the debt or answer for the default or liability of any other person," a married woman cannot be held upon a promissory note which she signs as maker for the accommodation of another; the form of suretyship is immaterial.

2. As between the immediate parties to a promissory note, it may be shown that the maker signed for the accommodation of the payee.

3. If a promissory note, although made in fact by a married woman, embodies a contract that she is disabled by law from making, it never becomes her promissory note, and the rules of the law merchant have no applicancy thereto.

4. Defendant's husband applied to plaintiff bank for a loan, which was refused, but the bank offered to discount defendant's notes endorsed by the husband, and for this purpose defendant executed notes, of which the note sued on was a renewal, which the husband endorsed and delivered to the bank, but before the discount was made, defendant was required to sign a "proceeds check" for the amount of each note, less discount, which check was charged to her to offset the credit resulting from the discount of the note and as a part of the same transaction, the

money being immediately placed to the husband's credit, and there being no instant of time during which the defendant had possession or control of the proceeds of the discount. *Held*, that the notes were given by defendant for the accommodation of her husband, and that the renewal note was unenforceable as against her under section 5 of the Married Woman's act (*Pamph. L.* 1895, *p.* 821; *Gen. Stat.*, *p.* 2017), which provides that a married woman shall not become an accommodation endorser, guarantor or surety, nor shall be liable on any promise to pay the debt or answer for the default or liability of any other person.

5. The Negotiable Instruments act (*Pamph. L.* 1902, *p.* 583) gives no validity to the contract of a married woman made by way of suretyship or promise to pay the debt of another person.

On rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices FORT, PITNEY and REED.

For the plaintiff, *Theodore B. Booraem.*

For the defendant, *Craig A. Marsh.*

The opinion of the court was delivered by

PITNEY, J.   This action was brought to recover the amount due upon a promissory note dated June 11th, 1903, payable to the order of the plaintiff, for $3,866.57, signed by the defendant and her husband, Christian Schepflin, who died before the commencement of suit. The making and delivery of the note were not disputed. The defence was that it was made without consideration moving to the defendant; that at the time of the making thereof she was a married woman, and gave the note as surety for her husband, and that she neither directly nor indirectly obtained any money, property or other things of value, for her own use or for the benefit of her separate estate, on the faith of the note. Motions for nonsuit and for direction of a verdict in defendant's favor were made upon grounds that properly raised the questions presently to be dealt with. These motions were overruled, and the learned trial justice, against objection, di-

rected a verdict in favor of the plaintiff for the full amount of the note. A new trial is now asked because the verdict is contrary to the evidence and contrary to law, and because the trial justice erred in refusing defendant's motions and in directing a verdict for the plaintiff.

The evidence showed that the note in suit was the last renewal of a series of notes that had been discounted by the plaintiff bank under the following circumstances: On September 16th, 1899, Mrs. Schepflin gave to her husband for his accommodation her promissory note for $2,500, payable four months after date at plaintiff's bank. Whether the note was payable to her own order and by her endorsed before delivery to her husband, or whether it was payable to his order, does not clearly appear, and in our view makes no difference. The note was given for the purpose of enabling the husband to procure a loan from the bank for his own benefit. He endorsed it and presented it to the cashier for discount. The cashier testified that upon being applied to by the husband he explained to him that the bank could not loan the money to him, but would loan it to Mrs. Schepflin. The cashier thereupon filled out what is called in the case a "proceeds check," handed it to Mr. Schepflin and told him that if he would get the check signed by his wife the bank would discount the note. The check was in the following form:

"$2,500.00      NEW BRUNSWICK, N. J., Sept. 19, 1899.
    51.33
———————         The Peoples National Bank pay to the
  2,448.67      order of Proceeds of Note Twenty-four
                hundred Forty-eight and 67/100 Dollars."

Mrs. Schepflin signed this check, and the husband turned it over to the bank on September 21st. Whether the cashier of the bank was present at the signing of the check, or whether the husband alone was present with Mrs. Schepflin at that time, was in dispute, but in our view the difference is immaterial. Upon the presentation of the proceeds check,

bearing Mrs. Schepflin's signature, to the bank on September 21st, the note was discounted, and the amount of the note, less discount, to wit, $2,448.67, was placed to the credit of Mrs. Schepflin's name upon the discount-book and carried into the ledger to the credit of her name under a heading "Sundry Accounts." At the same time, or at least on the same day, and as a part of the same transaction, the account in her name was debited with precisely the same sum on account of the proceeds check, and that sum was carried to the credit of her husband and thereby placed subject to his disbursement, and afterwards it was disbursed and used by him.

On January 5th, 1900, Mrs. Schepflin made another note, in like form, for the further sum of $2,500, and delivered it to her husband for his accommodation and benefit. He applied to the bank to discount this note and again was met with a refusal unless he would first procure a proceeds check from his wife. A check was thereupon filled up by the cashier, dated January 4th, 1900, and reading, "The Peoples National Bank pay to Proceeds of Note Twenty-four Hundred Forty-eight and 67/100 Dollars," and delivered to Mr. Schepflin in order that the wife's signature might be procured. It was procured, the check was returned to the bank on January 6th, and the second note was thereupon discounted, the proceeds thereof ($2,448.67) being entered as in the former instance to the credit of her name upon the discount-book and upon the ledger of "Sundry Accounts." At the same time her name was debited upon this ledger with the like amount on account of the proceeds check, and the amount was carried over to the credit of the husband.

These two notes of $2,500 each were renewed from time to time thereafter, in whole or in part, the successive renewal notes being signed by Mrs. Schepflin, endorsed by her husband and delivered to the bank. On each occasion her name seems to have been credited on the ledger with the proceeds of the renewal note and debited at the same time with the like amount, the debits being represented by the maturing notes, although these did not always agree in amount with

the renewals by reason of the fact that partial payments were at different times made by the husband.

This series of discounts and renewals finally eventuated in the giving of the note in suit, which represented the balance at that time due to the bank.

The evidence renders it clear, beyond dispute, that unless Mrs. Schepflin can be deemed to have received the proceeds of the original discounts, she did not, either at the time of the making of the original notes, or at any other time, receive any consideration of value for her own use or for the benefit of her separate estate. She had no other banking transactions with the plaintiff, kept no funds on deposit there, drew none, and gave no checks saving the "proceeds checks" above mentioned.

Section 5 of our revised Married Woman's act of 1874, as amended in 1895 (*Pamph. L., p.* 821; *Gen. Stat., p.* 2017), declares that any married woman shall have the right to bind herself by contract in the same manner and to the same extent as though she were unmarried—*"provided,* that nothing herein shall enable such married woman to become an accommodation endorser, guarantor or surety, nor shall she be liable on any promise to pay the debt or answer for the default or liability of any other person; *provided further, however,* that if on the faith of any endorsement, contract of guaranty or suretyship, promise to pay the debt or answer for the default or liability of any other person, any married woman obtains, directly or indirectly, any money, property or other thing of value, for her own use, or for the use, benefit or advantage of her separate estate, she shall be liable thereon as though she were unmarried."

Under the facts of the present case the second proviso has no applicancy, and the question is whether the note in suit can have legal efficacy in view of the first proviso. The validity of the note in suit manifestly depends upon the validity of the original notes for $2,500 each, dated September 16th, 1899, and January 6th, 1900. If Mrs. Schepflin did not, in a legal sense, receive the proceeds of the discount of those

notes, she was an accommodation maker. Since the notes were intended to be and were in fact endorsed by the husband, she was his surety if the money was in fact borrowed by him from the bank. In *Van Deventer* v. *Van Deventer,* 17 *Vroom* 460, 464, where the wife was joint maker with the husband of a note given to secure moneys borrowed by him, she was held to be a surety. If it had not been in contemplation that Mr. Schepflin should become a party to the instrument, still the wife's note, made to secure a loan advanced to him, would be a promise to pay his debt. Contracts of suretyship and promises to pay the debt of another person are equally within the ban of the first proviso of section 5 of the Married Woman's act. And as pointed out by Justice Collins in this court, in *Vliet* v. *Eastburn,* 34 *Id.* 450, 453, it is not significant that the proviso in terms prohibits the making by a married woman of an accommodation endorsement and is silent with respect to her becoming an accommodation maker of a promissory note; the form of suretyship is immaterial. Upon a review of this decision by the Court of Errors and Appeals, the judges were divided in opinion upon another question, but there was almost unanimity upon this point. The present Chief Justice, who wrote the opinion of a plurality of the court, said (35 *Id.* 645) : "Although in form Mrs. Eastburn became an original debtor by signing the note in suit, she was in fact merely a surety for Cowenhoven, having put her name to the paper for his accommodation." And the opinion of Justice Van Syckel shows that he entertained a like view.

Prior to the enactment of the Negotiable Instruments law (*Pamph. L.* 1902, *p.* 583) it was held by our courts that in an action at law upon a promissory note made by two persons, one of them could not set up as a defence that he was, to the knowledge of the payee, an accommodation maker, and therefore entitled to the privileges of a surety, on the ground that his right to the *status* of surety was an equity not enforceable in the courts of common law. *Anthony* v. *Fritts,* 16 *Vroom* 1; *Shute* v. *Taylor,* 32 *Id.* 256. It was pointed out by Chief

Justice Beasley, in *Mount* v. *Zisgen,* 7 *N. J. L. J.* 71, that evidence to show suretyship is admissible when it is offered not to vary the terms of the contract, but to show the *status* of the party and a fact which, taken in connection with the *status,* would render the contract void, and that he had intended to say in the opinion in Anthony *v.* Fritts that this distinction must be made. As between the immediate parties to a promissory note, its real character may always be shown. If the payee sues upon it, it may be proved that the note was really given for his accommodation. *Messmore* v. *Meyer,* 27 *Vroom* 31. Save for the law merchant, the real character of a note might be shown even as against a holder in due course. But if a contract, although made in fact by a married woman, is one that she is disabled by law from making, it never becomes her promissory note, and the rules of the law merchant can have no applicancy to it. *Woolverton* v. *Van Syckel,* 28 *Id.* 393; *Vliet* v. *Eastburn,* 34 *Id.* 454; 35 *Id.* 646, 650.

Even with respect to parties capable of contracting, it is well settled that the rule against varying the terms of a written instrument by parol evidence does not apply at all to evidence tending to show, as between the parties, that the contract was void for want of consideration or the like. *Metlar's Administrators* v. *Metler,* 3 *C. E. Gr.* 270, 273; 4 *Id.* 457; *Chaddock* v. *Vanness,* 6 *Vroom* 517 (at *pp.* 520, 522); *Johnson* v. *Ramsey,* 14 *Id.* 279 (at *p.* 282); *Middleton* v. *Griffith,* 28 *Id.* 442 (at *p.* 448). And this is still the case under the Negotiable Instruments act of 1902. *Pamph L., p.* 583, §§ 16, 24, 28, 29, 68, 196.

The fundamental inquiry, therefore, upon which the present case turns is whether the loans resulting from the discount of the two notes of $2,500 each, were made to Mrs. Schepflin or to her husband; and this is a question of substance, not of form. So treating it, in our opinion, the question admits of but one answer. In each instance (for the evidence renders it clear that the circumstances of the two transactions were indistinguishable), while the cashier of the bank professed an

unwillingness to lend the money to Mr. Schepflin and a willingness to lend it to the wife, the parties proceeded to take effective measures to prevent her from having at any time the least control of the proceeds of the notes or either of them by procuring from her, in advance of the discount, an assignment of the total proceeds by means of the two "proceeds checks" above referred to. These checks were intended to have efficacy at the very instant the note was discounted. Each note and its corresponding check, and the bookkeeping entries by which in form the proceeds of the discount were placed to the wife's credit and in form were transferred from her credit to that of her husband by means of the check, were parts of one and the same transaction, the practical and intended effect of which was to pass to her husband immediately the proceeds of the discount, precisely the same as if the discount had been directly credited to him in the first instance and the proceeds check had been dispensed with. The bookkeeping entries, like the "proceeds checks," were pure fictions so far as they purported to evidence any transaction between the wife and the bank. Notwithstanding the fictions, the fact is clear that the bank's money remained in its own control at all times until it was placed by it within the control of Christian Schepflin. The loans, therefore, were in fact made by the bank to him.

The present case is thus clearly distinguishable from those cases in which it has been held that if the loan is made in fact to the wife she is a principal debtor and not a surety, although it be her purpose at the time to afterwards lend the money to her husband and she proceeds to carry out that purpose when she is placed in control of the fund. Such were the cases of *First National Bank of Elizabeth* v. *Craig,* 1 *N. J. L. J.* 153, where the note in suit was discounted for the wife, the proceeds placed to her credit on the books of the bank and in her own bank-book, and she drew them *afterwards* by her own checks, payable to her husband's order; *Todd* v. *Bailey,* 29 *Vroom* 10, where there was evidence (believed by the jury) showing plainly that the loan was made to the wife, and the trial judge instructed the jury that *if*

*this was the true version of the transaction* the plaintiff was entitled to recover the moneys in question, but that *if the loan was made to the husband,* the wife standing as surety, the defendant was entitled to a verdict; and that *if the wife was the real borrower,* it was of no consequence whether it was her purpose to turn over the money so obtained to her husband for his use; and *Hackettstown National Bank* v. *Ming, 7 Dick. Ch. Rep.* 156, where the husband discounted the note ostensibly for his wife's benefit, received a check for the proceeds payable to her order, and *afterwards* took this check to her and persuaded her to endorse it over to him. It was held by Vice Chancellor Pitney (*7 Dick. Ch. Rep.,* at *p.* 163) that the drawing of the check to the order of the wife and handing it to the husband was a mere offer of a loan to her on the note; that until she accepted that offer and used the check by endorsing it, the contract of lending was merely executory, and that her action in endorsing the check completed a contract of lending between the bank and her, so that she became the borrower.

In those cases the wife, at the time of the discount, became the actual recipient of the money or its equivalent, which thereupon became her separate property and subject to her own disposition by virtue of the Married Woman's act. In the case before us there was no instant of time during which the defendant had possession or control of the proceeds of the discounts. The loans were not made, nor was any credit entered in her name at the bank, until after the "proceeds checks" had been lodged with the cashier. In form—in fiction—those checks operated to assign in advance the proceeds of a loan made to her; in substance and in fact they prevented, as they were intended to prevent, the loan from reaching her.

To attribute any binding force to her promissory notes given under such circumstances would be running counter not only to the spirit but to the letter of section 5 of the Married Woman's act.

It may be suggested that if a married woman is to be permitted, as in the cases just cited, to lend to her husband, or

to another, moneys borrowed by her as soon as she receives them, there is little more mischief in permitting her to assign the proceeds of the loan in advance of receiving it. But this is a question of policy that it is the province of the legislature to deal with, not of the courts. Moneys once received by the wife, although they be borrowed, become her property, which the statute permits her to give away or lend as she pleases. So she may pledge or mortgage her separate property to secure the debt of her husband or any third party. But the statute disables her from *mortgaging her future* to secure the debt of another, which is the effect of a contract of suretyship or the like.

The original notes in question here, and most of the renewals, were given prior to the Negotiable Instruments act of 1902. The note in suit was given after the passage of that act. In our view, this makes no difference. This statute gives no validity to the contract of a married woman made by way of suretyship or promise to pay the debt of another person.

It follows that the learned trial justice erred in refusing defendant's motions for nonsuit and for direction of a verdict, and the rule to show cause should be made absolute.