# The Philadelphia National Bank v. Snydman et ux.

*Arthur Littleton* and *Murdock Goodwin,* for plaintiff.
*Sacks & Piwosky* and *Maurice M. Morton,* for defendants.

KUN, J., March 3, 1936.—Plaintiff, The Philadelphia National Bank, issued its writ of assumpsit and filed a statement of claim against Nathan Snydman and Sarah Snydman demanding from defendants the sum of $2,600 with interest from September 10, 1931. The cause of action is based upon a note signed by Nathan and Sarah Snydman on June 10, 1931, payable three months after date, to the order of "ourselves", in the amount of $2,600. This note was endorsed by the makers, Nathan and Sarah Snydman, to the Northwestern Trust Company on June 10, 1931. Various paragraphs of plaintiff's statement of claim were admitted in the affidavit of defense to the effect that defendant, Sarah Snydman, signed the note as maker, that the note was endorsed before maturity by the Northwestern Trust Company and negotiated to plaintiff, The

Philadelphia National Bank, which was the holder of the note, for value, that the said note has not been paid and was presented for payment according to its terms. Plaintiff offered in evidence the aforesaid note and also the protest for nonpayment. It was agreed of record that Nathan Snydman, the comaker of the note with defendant, Sarah Snydman, died since the making of the note and before suit was filed, and that although his name appears in the caption no personal representative of decedent was served with the writ. It was therefore agreed between counsel that nothing in the case "could apply to him or his estate". It was also agreed of record that defendant Sarah Snydman was the wife of Nathan Snydman. The defense raised was that Sarah Snydman executed the note as an accommodation maker for her husband, and that she received no benefit from the Northwestern Trust Company, and that therefore, under the Act of June 8, 1893, P. L. 344, she was not liable to The Philadelphia National Bank, which is the endorsee of the note from the Northwestern Trust Company. The jury found for plaintiff in the sum of $3,250, and defendant Sarah Snydman has filed motions for judgment notwithstanding the verdict and for a new trial.

There is no basis in the record for entering a judgment n. o. v. for defendant. The question whether or not defendant is entitled to a new trial depends on the determination of two substantial questions. The trial judge refused to permit defendant to testify. This presents the question whether or not a widow is incompetent under the Act of May 23, 1887, P. L. 158, sec. 5, to testify in a suit by the holder of a negotiable instrument against her as a joint maker with her deceased husband, when she acted as surety for her husband. The act provides:

"Nor, where any party to a thing or contract in action is dead . . . and his right . . . therein has passed . . . to a party on the record, who represents his interest in the subject in controversy, shall any surviving or remaining party to such thing or contract, or any other person whose

interest shall be adverse to the said right of such deceased . . . be a competent witness to any matter occurring before the death of said party . . . unless the proceeding is by or against the . . . joint promissors or joint promissees, of such deceased . . . and the matter occurred between such . . . joint promissors or joint promissees and the other party on the record, or between such surviving . . . promissors or promissees and the person having an interest adverse to them, in which case any person may testify to such matters".

It is to be noted again that the estate of the deceased husband is not a party to this suit. The addition of his name as a party defendant was a nullity, inasmuch as he had died before the suit was filed. His personal representatives were not made defendants. So far as the effectiveness of the suit is concerned, it is as though the wife defendant had been sued alone.

In the case of Strause v. Braunreuter, 4 Pa. Superior Ct. 263 (1897), the facts were as follows: Defendant, Elise Braunreuter, signed a demand instrument together with her husband, as joint makers. The husband died subsequently, and plaintiff, holder of the note, brought suit against the wife to recover the amount of the note. At the trial, defendant offered to prove that she signed the note as surety for her husband. The lower court refused to allow defendant to so testify, because, they held, she was incompetent under section 5(e) of the Act of 1887, supra. An appeal was taken from the verdict and judgment for plaintiff, and one of the errors assigned was the refusal to allow defendant to testify. In an opinion by Rice, J., it was stated, at pages 266, 267:

"No interest or policy of law now makes any person an incompetent witness in any civil case or proceeding unless he is shown to come within one of the specified exceptions, and the only exceptions we are here called upon to consider are those contained in clauses (c) and (e) of section 5 of the Act of May 23, 1887, P. L. 158. By clause (e) the disqualification is made to depend not only on the fact of the

witness being a surviving or remaining party, to the thing or contract in action but also on the fact of his having an interest adverse to the right of the deceased party which right has passed by his own act or the act of the law to a party on the record who represents his interest in the subject in controversy. The deceased party to the contract in action was Adam Braunreuter but his right had not passed to a party on the record who represented his interest. The issue was between Joseph H. Strause and Elise Braunreuter. The legal representative of Adam Braunreuter was not a party to the record, and the testimony which the defendant proposed to give related to matters occurring between her and the agent of the living plaintiff, and concerning which he had testified fully at the instance of the plaintiff. The estate of Adam Braunreuter may have been interested in the question being tried, but not in the immediate result of the suit. There is wanting, therefore, one of the essentials necessary to bring the case within the exception. The language of the clause is plain and unambiguous, and there is no justification for construction whereby it shall be extended to cases not expressly excepted from the general rule of competency. But even if there were room for construction we think the decision in Bank v. Henning, 171 Pa. 399 would be conclusive of the question for determination."

The judgment was, therefore, reversed and a new trial granted. See also Waugaman v. Henry, 75 Pa. Superior Ct. 94, 100 (1920).

It is apparent, upon a careful reading of the Act of 1887, and upon consideration of the cited cases, that the defendant widow is competent to testify against the plaintiff holder of the instrument. The right of the deceased husband did not pass to the holder of the instrument; the estate of the deceased husband has no immediate interest in the suit, and, lastly, there was no adverse interest of the widow on the record to the estate of her deceased husband.

The second substantial question is whether or not a bona fide holder for value of a negotiable instrument may recover thereon, in Pennsylvania against a married woman who contracted the obligation as a surety in violation of the prohibition in the Married Woman's Act of June 8, 1893, supra, sec. 2. The act provides:

"Hereafter a married woman may, in the same manner and to the same extent as an unmarried person, make any contract in writing, or otherwise, which is necessary, appropriate, convenient or advantageous to the exercise or enjoyment of the rights and powers granted by the foregoing section, but she may not become accommodation endorser, maker, guarantor or surety for another, and she may not execute or acknowledge a deed, or other written instrument, conveying or mortgaging her real property, unless her husband join in such mortgage or conveyance."

As the precise question does not appear to have been passed upon by either the Supreme Court or the Superior Court, it requires considerable study. The Negotiable Instruments Law of May 16, 1901, P. L. 194, makes no specific provision regarding real or personal defenses on instruments in the hands of holders in due course. Section 57 authorizes a holder in due course to enforce payment on the instrument "against all parties liable thereon", and declares that he holds it free of defenses available to prior parties among themselves. The question still remains, however, whether the use of the word "liable" indicates as the foundation of recovery a liability upon the instrument as distinguished from a contract ineffectually sought to be executed by one without capacity to do so. This is pointed out in Martin v. Hess, 23 Dist. R. 195 (1914), where it was held that a holder in due course could not recover against the maker on a note given for a gaming consideration, because the note was void. The court said:

"The maker of a note given in payment of a gambling transaction is not liable on such instrument, as by law such instrument is null and void and of no effect".

The Negotiable Instruments Law makes no provision regarding instruments executed by married women. It does, however, take implied recognition of the nonliability in certain cases of corporations and infants. Section 22 provides:

"The indorsement or assignment of the instrument by a corporation or by an infant passes the property therein, notwithstanding that, from want of capacity, the corporation or infant may incur no liability thereon."

Finally, section 29 of the act provides:

"An accommodation . . . maker . . . is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party."

That does not answer the question, because a married woman cannot become an accommodation party.

The fundamental problem, therefore, is not one of negotiable instruments, but rather one of State policy, i.e., whether the incapacity to contract is so important an expression of policy that the law's prohibition will not yield even in favor of an innocent purchaser who took the instrument without notice of the incapacity of the maker and paid a fair consideration therefor. There is a conflict of authority on the subject in the reported cases. In Georgia it is held that a bona fide holder for value may recover against a wife though she signed as a surety: Colquitt v. Dye, 29 Ga. App. 247, 114 S. E. 643 (1922); Smith v. First National Bank of Fitzgerald et al., 5 Ga. App. 139, 62 S. E. 826 (1908); Third National Bank of Columbus v. Poe, 5 Ga. App. 113, 62 S. E. 826 (1908). Likewise, in Alabama the Supreme Court followed an earlier decision to that effect with some reluctance, saying:

"Although the result may be a material emasculation of the statute prohibiting suretyship by the wife for the husband's debt . . . and although that decision may be technically inconsistent with the established theory that the wife's contracts of suretyship are per se void, we

nevertheless feel bound to adhere to the principle declared in Scott v. Taul": Birmingham Trust & Savings Co. v. Howell, 202 Ala. 39, 79 So. 377 (1918).

In Indiana the same rule seems to be followed: Bough et al. v. Innman, 77 Ind. App. 550, 133 N. E. 844.

On the other hand, in a number of States it has been held that such a defense may be maintained. This is the rule in Texas: Haas et al. v. American National Bank of Austin, 42 Tex. Civ. App. 167, 94 S. W. 439 (1906); Schenck et al. v. Foster Building & Realty Co. et al., Court of Civil Appeals of Tex., 215 S. W. 877 (1919).

In Nebraska the court, sustaining such a defense, said:

"We think the defense of coverture is analogous to that of minority. . . . The reason for that rule rests in the absolute right of the minor to disaffirm all contracts, other than for necessaries, made while under the disability of infancy. In like manner there can be 'no such thing as an innocent purchaser of a married woman's note,' because of the absolute right of a married woman to disaffirm all contracts executed while under the disability of coverture, which are not made with reference to, and upon the faith and credit of, her separate business or property. We therefore hold that a purchaser for value, before maturity, of a promissory note, signed by a married woman, cannot invoke the rule of innocent purchaser, as against the defense of coverture, by showing simply that he had no notice or knowledge of such coverture at the time he purchased such note": T. G. Northwall Co. v. Osgood, 80 Neb. 764, 768, 115 N. W. 308 (1908).

The same rule seems to apply in Vermont: Seaboard National Bank v. Fisher et al., 98 Vt. 506, 129 Atl. 927 (1925). In People's National Bank of New Brunswick v. Schepflin, 73 N. J. L. 29, 62 Atl. 333 (1905), it was said by Justice Pitney (later a member of the United States Supreme Court) that the Negotiable Instruments Act would give no validity to an instrument signed by a married woman as surety in violation of the statute.

The precise question has received but slight direct treatment in Pennsylvania. However, a number of early cases contain dicta upon the subject so strong and positive that they are entitled to great weight. In Moore v. Hershey, 90 Pa. 196 (1879), the endorsee of a note sued the maker, who defended on the ground that he was a lunatic at the time he executed it. Mr. Justice Paxson, after holding that a lunatic when sued upon the contract may show want of consideration, but that when a man deals fairly with the lunatic and without knowledge of his lunacy he may recover the value of what he honestly parted with, said at page 202:

". . . the true rule applicable to such cases is, that while the purchaser of a promissory note is not bound to inquire into its consideration, he is affected by the status of the maker—as in the case of a married woman or a minor. In neither of these cases can he recover against the maker."

This language is quoted with approval by Justice Trunkey in Wirebach's Exec. v. First National Bank of Easton, 97 Pa. 543, 551 (1881).

In Loeb v. Mellinger et al., 12 Pa. Superior Ct. 592 (1900), a partnership executed a negotiable note which the payee sold to plaintiff. At the trial plaintiff offered the note and rested. One of the members of the defendant partnership was a married woman. She offered to prove that she was a married woman and that the note was executed by her partner without her consent and was not given in any partnership transaction but merely as accommodation to the payee, so that the payee might raise money. These offers were rejected. The court below gave binding instructions for plaintiff. On appeal the judgment was reversed and a new trial awarded on the ground that defendant was entitled to prove the facts offered because this would constitute a fraud in the issuing of the note, and the burden would then be upon plaintiff to prove that he obtained the note before maturity in good faith and for value, of which the jury would be the judge. In

the course of the opinion, Rice, P. J., said at page 597:

"It may be argued with much force, that, as a married woman has no contractual capacity to bind herself in that way, the purchaser of her accommodation note takes it charged with her disability and subject to her right to set up that defense."

A close case is Bank v. Short, 15 Pa. Superior Ct. 64 (1900). The bank brought suit against a married woman to recover on a promissory note which it had purchased before maturity in the usual course of business. The defense was that the note was given by the married woman, as an accommodation (surety) for her husband, to her father-in-law, and by him endorsed to the plaintiff bank. At the trial plaintiff submitted a point, reading:

"If the jury find from the evidence that the plaintiff became the owner and holder of the negotiable note in question, for value, before maturity, in the regular course of business, without notice of the defense now attempted to be made thereto, the verdict must be made for the plaintiff for the amount of the note and the interest thereon."

It will be noticed that this point precisely states the question under consideration. The court below declined the point. A verdict and judgment for defendant followed, from which plaintiff appealed. The judgment was affirmed. While Orlady, J., in the course of his opinion refers to the knowledge of the cashier of the plaintiff bank that defendant was a married woman, that was not the controlling reason for the decision, which may rather be found in the statement, at page 68, that "the note was absolutely void, it being of a kind expressly prohibited by the act of assembly". Obviously, if the note was "absolutely void" its validity could not be affected by any knowledge or lack of knowledge of the holder as to the status of the maker. Later in the opinion, at page 69, the definitive statement is made:

"The note being absolutely void as to her when it was signed, no subsequent negotiation could vitalize it into a form which she could not defend against."

In Allentown National Bank v. Bartholomew, 4 Leh. L. J. 325 (1911), a wife executed a note payable to her husband which was discounted with plaintiff bank. The jury determined that the proceeds of the note went to her husband and were not paid to her or used by her. The effect of knowledge of the status was directly passed upon. Trexler, P. J., then in the common pleas, said:

"If it is found in any case that she [a married woman] has become accommodation endorser, maker, guarantor or surety, there is no liability—she has attempted to do something that the law expressly declares she is incapable of doing. She has no power whatever thus to contract. . . . It is strongly contended by the plaintiff that the bank not having notice of the fact that the money was for the husband can recover against the wife. I do not think that the fact of want of notice alters the case. The determining factor is the inherent nature of the transaction. The knowledge of the officer of the bank or the absence of it does not change the fact. . . . One who deals with a married woman in matters involving exceptions in the Act of 1893 does so at his peril, and if it develops that the transaction was not for her benefit and the money in the first instance at least received by her no recovery can be had against her."

In Martin v. Hess, supra, it was held that the Negotiable Instruments Law did not impliedly repeal the statute making void gaming contracts and notes given in payment thereof. The court held that the Negotiable Instruments Law applies only to paper that might have been obligatory between the parties:

"Where the parties were never bound because the law made the note void, as being contrary to public policy as expressed in the statutes, the Negotiable Instruments Act does not have any application.

"The construction of the Act of . . . 1901 . . . sought for by the plaintiff would likewise repeal existing laws for the protection of infants, married women and

insane or feeble-minded persons; and it is evident that such was not the intention of the legislature."

Under the circumstances, therefore, it is not important to undertake a discussion of the authorities dealing with the question whether a married woman's contract of suretyship is void or voidable, nor is it necessary to explore the precise juridical meaning of the term. It is enough to observe that, although such a defense is purely personal to the married woman and can be set up by no one else, her incapacity is announced as a matter of public policy and for that reason there can be no estoppel against her. This is true even since the Act of 1893, supra, which makes her capacity the rule and her incapacity the exception.

In Murray v. McDonald, 236 Pa. 26 (1912), a married woman falsely certified on a judgment note which she signed as surety for her husband, that the money was given for her personal use. It was contended that she was not entitled to equitable relief in the face of this certification. Justice Stewart answered this contention and said:

"The judgment was not opened to permit her to show a claim to equitable relief, for she had asserted none, and had none. . . . It was opened solely because the transaction . . . was one not only contravening public policy, but one which offended against a positive statute."

A very able opinion collecting many of the earlier authorities will be found in Platt, Barber & Co. v. Crawford et al., 23 Pa. C. C. 148 (1899).

It is true that in recent years Pennsylvania has sought to make negotiable paper executed in this State freely marketable in other States and to add no burdens to such paper in the competition of the market. This is illustrated in an interesting opinion of the present Chief Justice in Putnam v. Ensign Oil Co., 272 Pa. 301, where, in holding that a purchaser of a note was bound by the by-laws of the corporation, the court nevertheless appealed to the legislature to alter the law so that negotiable paper, so often described as "a courier without luggage", might

in fact be so. Such a statute was passed in 1925. Nevertheless, the incapacity of a married woman to act as surety is a matter of policy so thoroughly imbedded in the law of this State that it would seem to require express and specific legislative authority to consider it abolished.

The conclusion follows from a consideration of the foregoing cases that the defense of want of capacity by a married woman has not been wiped out by the Negotiable Instruments Law and that as a matter of public policy it must still be enforced. The plaintiff holder of the note is not left without a remedy. It has a clear right of action against its endorser, and of course against the maker of the note (or in this instance his estate) for whom the defendant allegedly signed as surety.

The motion for judgment n. o. v. is overruled. The motion for new trial is granted.